# MEMORANDUM

OF A

## CASE NOT REPORTED IN FULL.

JONATHAN L. BOOTH AND OTHERS, PLAINTIFFS, *v.* THE
CLEVELAND ROLLING MILL COMPANY AND OTHERS,
DEFENDANTS.

*Declarations of agent— When the act of the agent can be proved, it is competent to
prove what he said about the act while doing it— Res gestæ— Objection to evidence —
must be taken as soon as its objectionable character is apparent.*

MOTION by defendants for a new trial on exceptions taken at the
Circuit, and ordered to be heard at the General Term in the first
instance, after a verdict in favor of the plaintiffs.

The action was brought to recover for an alleged breach of con-
tract. The plaintiffs were the owners of a patent for an invention
known as the Booth rail, being a rail for use on railroads, composed
of an iron base and a steel cap, made separately, and afterwards put
together by clamping, without the use of bolts, screws or rivets.
In 1867 and 1868, the rails were manufactured in small quantities
by the plaintiffs, and put in use on several roads. On the 1st day
of June, 1869, the defendants, who are manufacturers of rails,
entered into a contract, in writing, with the plaintiffs, by which the
plaintiffs gave to the defendants the right to manufacture the rail
in question in the States of Ohio, Indiana and Illinois, such right
being exclusive (except that the plaintiffs reserved the right to
license companies having roads in said States to manufacture for
their own roads), so long as the defendants should supply the
demand for the rail in those States. All rails were to be of good
materials and workmanship. The license was given on certain con-
ditions, one of which was, that the defendants were to pay a roy-
alty of two dollars and fifty cents on each ton for the first 7,000

tons manufactured, payable on the fifteenth of each month for the month preceding. The defendants were "to proceed at once to make said rail in Cleveland, and within a reasonable time in Chicago, and to use all proper effort and due diligence to introduce and sell the same; no other rail made by them to receive more attention or interest than the Booth rail, so long as said rail holds good as a practical and reliable rail for use," One of the breaches alleged in the complaint, and the only one for which the plaintiffs recovered, was, that the defendants refused to fill an order of The Lake Shore and Michigan Southern Railroad Company for 4,100 tons of the plaintiffs' rails, on which the plaintiffs would have been entitled to receive from the defendants a royalty of $10,250. For that sum, with interest, the plaintiffs recovered a verdict.

The case has been twice tried. The first trial resulted in a nonsuit, which was reversed at General Term (13 N. Y. S. C. R., 591), where it was held that the contract between the parties was not a mere license to the defendants to make and sell the Booth rail, but that, by its provisions, the defendants impliedly promised to perform the conditions therein expressed, according to the terms of the contract, in the performance of which the plaintiff had an interest. That construction of the contract was followed at the last trial.

Several exceptions as to the admission of evidence were taken by the defendants, as to one of which the court at General Term, said: "It is contended that the court erred in permitting the plaintiff to give in evidence declarations of Chisholm, the vice-president of the defendants, in regard to the rails and steel. The plaintiff Booth, called by the plaintiffs, testified that he was present during the making of some of his rails by The Cleveland Rolling Mill Company, and that, in January, 1871, at the rolling mill where they rolled the solid steel rail and made the cap, he had a conversation with Mr. Chisholm as to the making of the Booth steel and rail, of which work Chisholm had charge. That Chisholm said, 'from his experience, he had become satisfied of the success of the invention, and that he never had any apprehension in reference to it, except the possibility of the cap becoming loose under wear, and now he had become satisfied in reference to that, and although' — At this point the defendants' counsel objected to the evidence as

incompetent. The objection was overruled, the defendants excepted, and the witness continued: 'He said that he was satisfied as to the rail now, perfectly; and that he was satisfied, also, that the difficulty was in the steel they had applied to it, and that there was no doubt of that, and they were going to give their steel works more definite attention after this, and he had no doubt he could make the rail a success.' I am of the opinion that the whole of this testimony was inadmissible, and if it had been objected to in season, it should have been excluded. The rule admitting the declarations of an agent to affect his principal has this extent only, that whenever what the agent did is admissible, then it is competent to prove what he said about the act while he was doing it. It is because it is a verbal act, and part of the *res gestæ*, that it is admissible at all. (G. Ev., § 113.) Here, although Chisholm was the agent of the defendant, and had charge of the work of making the Booth rails, and was then engaged (it may be assumed) in superintending the manufacture of some of those rails, yet the declarations had no connection with the particular work which was then going on, or with any act in which Chisholm was then engaged. But the objection should have been taken *in limine*, or, at least, as soon as the objectionable character of the testimony was apparent. It was not then taken. The witness was permitted, without objection, to detail the revelations of Chisholm concerning his experience, his apprehensions and his opinions respecting the plaintiffs' rail, until it became manifest that the communications made by their vice-president on that occasion were not favorable to the defendants, and then an objection was interposed in the midst of a sentence. It is not impossible that the delay arose from a laudable wish not to occupy the time of the court with an objection to what might turn out to be wholly unimportant and harmless, though inadmissible testimony; but if the practice were tolerated, it might be used for unworthy purposes, and would lead to mischievous consequences. Under the circumstances, the defendants should be held to have waived all objection to the testimony, it being responsive to the question (*Quin* v. *Lloyd*, 41 N. Y., 349); at least, it was in the discretion of the judge to sustain or overrule the objection, and his decision ought not to be reversed, unless it was a plain abuse of discretion, which it was not."

*W. F. Cogswell,* for the plaintiffs.     *George F. Danforth,* for the defendants.

Opinion by SMITH, J.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

New trial denied, and judgment ordered for the plaintiffs on the verdict.